28 U.S.C. § 157 governs core proceedings. While this section does not specifically define core proceedings, subsection (b)(2) provides a comprehensive, yet non-exclusive, list of core proceedings. *In re Baudoin*, 981 F.2d 736, 740-41 (5th Cir. 1993); *Wood*, 825 F.2d at 95; *Mirant*, 337 B.R. at 116. This list includes very specific proceedings and very broad proceedings. Some examples of specific core proceedings include preference actions, 28 U.S.C. § 157(b)(2)(F), and fraudulent conveyance suits, 28 U.S.C. § 157(b)(2)(H). Broad categories of core proceedings include "all matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), and "other proceedings affecting the liquidation of assets of the estate," 28 U.S.C. § 157(b)(2)(O). The Fifth Circuit warns against a broad interpretation of § 157(b)(2)(O) and prefers to deem a proceeding as core under the more specific examples rather than fitting a particular proceeding into the catch-all language of subsections (b)(2)(A) and (b)(2)(O). *See Wood*, 825 F.2d at 95; *Mirant*, 337 B.R. at 116. Nevertheless, the Fifth Circuit has not limited the definition of core proceedings solely to the specific examples set forth in the laundry list of 28 U.S.C. § 157(b)(2). Rather, the Fifth Circuit has defined a core proceeding as one which "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood*, 825 F.2d at 97. When determining whether a proceeding is core, a court must consider both the form as well as the substance of the proceeding. *Id.* (citing *In re World Fin. Servs. Ctr., Inc.*, 64 B.R. 980, 984-87 (Bankr. S.D. Cal. 1986)).

With respect to the Adversary Proceeding at bar, the category most likely to make this lawsuit a core proceeding is 28 U.S.C. § 157(b)(2)(K) because the Veldekens, in their First Amended Complaint, seek to invalidate GE's liens on the Tidwell Property. There is a split of authority on whether the liens referred to in 28 U.S.C. § 157(b)(2)(K) must relate only to property of the estate

or can also relate to property of the debtor. One line of cases follows a more lenient rule that in order for 28 U.S.C. § 157(b)(2)(K) to apply, the lien may relate to either property of the estate *or* of the debtor. *Continental Nat'l Bank v. Sanchez (In re Toldeo)*, 170 F.3d 1340, 1347 (11th Cir. 1999); *Hasset v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748 (S.D.N.Y. 1994); *In re Rarick*, 132 B.R. 47, 51 (D. Colo. 1991); *In re Grell*, 83 B.R. 652, 657 (Bankr. D. Minn. 1988).

The stricter line of cases holds that the lien may *only* relate to the property of the estate. *In re Huff*, 44 B.R. 129, 134 (Bankr. W.D.Ky. 1984); *In re Climate Control*, 51 B.R. 359, 361 (Bankr. M.D.Fla. 1985); *Citibank v. Park-KenilWorth Industries,* 109 B.R. 321, 325 (N.D. Ill. 1989); *In re Coan*, 95 B.R. 87, 89 (N.D. Ill. 1988); *In re Israel*, 112 B.R. 481, 483 (Bankr. D.Conn. 1990). The only court within the Fifth Circuit to address this issue followed this latter approach, limiting the scope of 28 U.S.C. § 157(b)(2)(K) to property of the estate, but not property of the debtor. *In re Jeter*, 48 B.R. 404, 406 n.1 (Bankr. N.D. Tex. 1985).

Other subsections of 28 U.S.C. § 157(b)(2) include explicit references to either "property of the estate" (28 U.S.C. § 157(b)(2)(E)) or "claims against the estate" (28 U.S.C. § 157(b)(2)(B) and (C)), but 28 U.S.C. § 157(b)(2)(K) is silent as to any limitation on either property of the estate or of the debtor. *See In re Blackmann*, 55 B.R. 437, 447 n.8 (Bankr. D.C. 1985). The need for limits on 28 U.S.C. § 157(b)(2)(K) arises from the fact that a plain reading without any limitations would allow bankruptcy courts to assert "a form of jurisdiction *ferae naturae,* capable of the rampant adjudication of property rights wherever found and by whomever owned." *In re Huff*, 44 B.R. at 134. However, this policy consideration is served equally by including liens on property of the debtor in addition to property of the estate. Therefore, this Court disagrees with *In re Jeter*, the only

court within the Fifth Circuit addressing this point, and believes that the more persuasive approach includes liens on property of the debtor under 28 U.S.C. § 157(b)(2)(K).

The liens in the present suit present a new challenge because they do not relate to property of either the estate or the debtor; rather they are liens on property which belongs to the *reorganized* Debtor. The estate ceased to exist upon confirmation of the Plan; that event also transformed the Debtor into the reorganized Debtor. As discussed above, *Wood* instructs a court to look beyond form to the substance of a proceeding in determining whether or not it is core. Here, the validity of the lien in question is vital to the success of the Plan. It is not only the validity of GE's current lien on the Tidwell Property that is necessary to the Plan's success; equally important is the validity of GE's original lien upon which it foreclosed. The Veldekens' First Amended Complaint asks this Court to invalidate that original lien and restore title in the Tidwell Property to the Veldekens. Such a result would undoubtedly alter the likelihood of success of the Plan. Therefore, looking beyond mere form to the substance of the proceeding, this Court finds that 28 U.S.C. § 157(b)(2)(K) should include liens on property of the reorganized Debtor. Accordingly, this Adversary Proceeding is still a core proceeding under 28 U.S.C. § 157(b)(2)(K) despite the termination of the bankruptcy estate.[26]

In sum, the Adversary Proceeding is core because it involves the validity of a lien on property of the reorganized Debtor, and, therefore, the Veldekens have not satisfied this element.

4.   **The proceeding could have otherwise been commenced in federal court absent federal jurisdiction under 28 U.S.C. § 1334(b).**

---

[26] If liens on property of the reorganized Debtor are not included under 28 U.S.C. § 157(b)(2)(K), then the only other provision that this Adversary Proceeding could classify as core under would be 28 U.S.C. § 157(b)(O); and, as already discussed, the Fifth Circuit's interpretation of this broad catch-all section is much narrower than its seemingly broad language. Despite the fact that the result of the suit could greatly affect the success of the Debtor's Plan, the suit would no longer be classified as a core proceeding under the *Wood* definition.

There is no question that the Adversary Proceeding does not involve a federal question. Therefore, for jurisdiction to exist independent of 28 U.S.C. § 1334(b), there must be diversity among the parties pursuant to 28 U.S.C. § 1332. The Veldekens vigorously argue that there is no diversity jurisdiction because they are citizens of the State of Texas and the two defendants whom the Veldekens brought into the suit when they filed their First Amended Complaint, Newbanks and Thomason, are also citizens of the State of Texas. [Docket No. 99, at 8.] This Court disagrees with the Veldekens' assertion that diversity jurisdiction under this requirement is tested at the time that the Motion to Abstain was filed. The language "could have been commenced" means that diversity jurisdiction should be analyzed as of the date of the filing of the suit, or in this case the date of removal to the District Court.[27]  The issue is not whether diversity would exist if the suit were presently filed in the District Court. Diversity jurisdiction did exist at the time the suit was removed to the District Court on September 30, 2005. On that date, there was only one defendant, GE, and it was a citizen of the State of Connecticut. [*See* note 4 *supra*.]

Even if the Veldekens' reading of this element of abstention is correct, and the addition of Newbanks and Thomason as non-diverse parties would defeat diversity jurisdiction in the District Court, they must show that these were necessary parties.[28]  However, at the hearings on the Motion to Abstain on June 28, 2006 and August 10, 2006, the Veldekens did not present any evidence or make any argument as to why Newbanks and Thomason are necessary parties to the suit. Therefore,

---

[27] When a case is removed to federal court, diversity is tested as of the date the suit was removed. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S. Ct. 347, 83 L. Ed. 334 (1939).

[28] Diversity jurisdiction in federal court can be lost by adding additional necessary parties. (*See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181(5th Cir. 1987)).

44

even if the Veldekens are correct in their reading of this element, they have failed to meet their burden of proof.

In sum, on the date of the removal, September 30, 2005, there was diversity between the Veldekens and GE. Alternatively, at the present time, diversity still exists because the Veldekens have not proven that Newbanks and Thomason were added as necessary parties. Accordingly, this action could have been commenced in federal court pursuant to 28 U.S.C. § 1332, and, under these circumstances, the fourth requirement is not satisfied.

### 5.    The action was commenced in state court.

The Veldekens' suit was commenced in state court. Therefore, the fifth requirement is met. However, it is highly significant that after GE removed the suit to the District Court, the Veldekens joined GE in requesting the District Court to refer the dispute to this Court. Accordingly,  the Veldekens are arguably estopped from claiming that this requirement has been satisfied.

### 6.    The action could be adjudicated timely in state court.

The Veldekens, as the parties moving for mandatory abstention, have the burden to satisfy this requirement. They need not show that the suit can be more timely adjudicated in state court, but only that the matter can be timely adjudicated in state court. *Thorpe*, 2003 WL 23323005 at *2. Their naked assertion that the suit can be timely adjudicated in state court, without more, is insufficient to satisfy this requirement. *Id.*; *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp.2d 596, 605-06 (S.D. Tex. 1999); *Allied Mech. & Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986). Here, the Veldekens provided no evidence at all as to whether the Harris County District Court (i.e. the court in which the suit was initially filed and to which the Veldekens now seek a remand) could timely

45

adjudicate this suit. Because they have failed to introduce any such evidence, they have failed to satisfy this sixth requirement.[29]

In conclusion, the Veldekens have clearly failed to satisfy the first, fourth, and sixth requirements; and arguably they are estopped from asserting that the fifth requirement has been met. All six requirements must be satisfied for mandatory abstention to apply. Therefore, this Court holds that it should not mandatorily abstain from adjudicating the Adversary Proceeding.

### B.   Permissive abstention under 28 U.S.C. § 1334(c)(1) is not appropriate.

#### 1.   Framework for permissive abstention.

Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court may permissively abstain "from hearing a proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). The bankruptcy court has "broad power to abstain whenever appropriate." *In re Wood*, 825 F.2d at 93. Factors to be considered when deciding whether to abstain include:

> (1) The effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;
> (2) Extent to which state law issues predominate over bankruptcy issues;
> (3) Difficult or unsettled nature of applicable law;
> (4) Presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
> (5) Jurisdictional basis, if any, other than § 1334;
> (6) Degree of relatedness or remoteness of proceeding to main bankruptcy case;

---

[29] In instances where federal courts have found that state courts could adjudicate the dispute in a timely manner, the movant introduced evidence that the suit had already been prosecuted to some extent in the state court, which had issued various orders and become familiar with the case. *See Broyles,* 266 B.R. at 784; *Thorpe,* 2003 WL 23323005 at *3-4. Here, the Veldekens filed suit on August 19, 2005 in Harris County District Court. GE, almost immediately after being served, removed the lawsuit on September 30, 2005. Thus, aside from the failure of the Veldekens to introduce any evidence that the Harris County District Court could timely adjudicate the dispute, the record reflects that during the 41 days that the suit was pending in that court, virtually nothing occurred. No hearings were held, no motions were filed, no discovery was conducted, and no orders were entered on the docket. [Docket No. 6, Ex. 8.] Thus, unlike this Court, the Harris County District Court has no background at all about the nature of this lawsuit or the substantive issues to be adjudicated.

(7) The substance rather than the form of an asserted core proceeding;
(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) The burden of the bankruptcy court's docket;
(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) The existence of a right to a jury trial;
(12) The presence in the proceeding of nondebtor parties;
(13) Comity; and
(14) The possibility of prejudice to other parties in the action.

*Broyles*, 266 B.R. at 785 (citing *Searcy v. Knostman*, 155 B.R. 699, 710 (S.D. Miss. 1993)).

### 2.      Application of the factors to the Adversary Proceeding

#### a.      The effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention

This factor is inapplicable in the present proceeding because the Plan has been confirmed and the estate no longer exists. *See In re Craig's Stores*, 266 F.3d at 390.

#### b.      Extent to which state law issues predominate over bankruptcy issues

The Adversary Proceeding includes only state law claims and does not include any bankruptcy issues. Therefore, this factor weighs in favor of permissive abstention.

#### c.      Difficult or unsettled nature of applicable law

The nature of the applicable law in this Adversary Proceeding is not particularly difficult. The Veldekens' causes of action—breach of contract, suit to quiet title, negligent misrepresentation, and breach of fiduciary duty—do not present novel issues of law. Moreover, because this Court has already spent substantial time adjudicating the Veldekens' Application for Temporary Restraining Order and the Defendants' Motions for Summary Judgment, including full day hearings held in December 2005 and June 2006, respectively, this Court has already familiarized itself with all of the

Veldekens' claims and applicable law. Therefore, this factor weighs against abstention and in favor

of adjudicating the present proceeding in this Court.

>    **d.     Presence of related proceeding commenced in state court or
>             other nonbankruptcy proceeding**

There are no other related proceedings in state court. Therefore, this factor weighs against

abstention.

>    **e.     Jurisdictional basis, if any, other than 28 U.S.C. § 1334**

Diversity jurisdiction existed at the time this proceeding was removed to the District Court

and thereafter referred to this Court. *See* Section IV.A.4. *supra*. Therefore, this factor does not

weigh in favor of abstention. Indeed, given the substantial time and resources already spent by this

Court, this factor weighs in favor of this Court adjudicating this suit.

>    **f.     Degree of relatedness or remoteness of proceeding to main
>             bankruptcy case**

The Adversary Proceeding is substantially related to the main bankruptcy case because

resolution of this proceeding could significantly affect the Plan.[30]  If the Veldekens prevail on their

---

[30] At the June 28, 2006 hearing on the Motion to Abstain and the Defendants' Motions for Summary Judgment, counsel for the Veldekens attempted to orally amend the pending First Amended Complaint by explaining that the Veldekens' Reply in Support of the Motion included a "withdrawal and waiver of the Veldekens' claims for any interest or title to the Tidwell Real Property, which is the subject of the Plan confirmed on May 8." Presumably, they did so in order to assert that the result of the Adversary Proceeding would not affect the success of the Plan because the only relief they seek would be monetary damages against the Defendants. Veldekens' counsel further attempted to request leave under Bankruptcy Rule 7015 to amend the Veldekens' First Amended Complaint to drop such claims. This Court issued a bench ruling denying the oral motion to amend because the Court believes that this tactic was nothing more than a bare-faced attempt to escape this Court's jurisdiction and shop for another forum. This Court has discretion to deny such motions. Although courts shall freely give leave to amend "when justice so requires," courts "may consider such factors as ... bad faith or dilatory motive" when denying leave to amend. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139-140 (5th Cir. 1993). The Veldekens' attempt to once again amend their complaint in order to defeat jurisdiction, and thereby avoid this Court's ruling on the pending Motions for Summary Judgment, constitutes bad faith and can be properly denied.

claims, GE could terminate the exit financing under the Plan. Because GE's financing is an integral part of the Plan, any threat to the continuation of GE's financing is a direct threat to the success of the Plan. [*See* Main Case No. 05-35291; Docket No. 619, at Article 8.1; *see also* Finding of Fact No. 44.] Therefore, this factor weighs heavily against abstention and strongly in favor of this Court adjudicating the Adversary Proceeding to its conclusion.

g.    **The substance rather than the form of an asserted core proceeding**

The Veldekens are claiming form over substance in this Adversary Proceeding by focusing on their argument that this is a non-core proceeding. The Veldekens put great importance on the fact that this proceeding involves only non-debtors and only state law claims. Their focus is on the form of the proceeding. However, moving beyond the posture of the parties to the substantive issues involved, the outcome of this proceeding could have a significant impact on the success of the Plan. As discussed under the third element of mandatory abstention above, this Court has determined that this is still a core proceeding. It is true that there is no longer an estate, and that only non-debtor parties are involved, but under 28 U.S.C. § 157(b)(2)(K) this is a core proceeding because it involves the validity of liens on property of the reorganized Debtor. Therefore, this factor weighs against abstention.

h.    **The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court**

This factor is inapplicable in the Adversary Proceeding because all claims are state law claims.

i.    **The burden of the bankruptcy court's docket**

49

Adjudicating the Adversary Proceeding will not burden this Court's docket. This Court has ample time and resources available to resolve the present dispute. In fact, the parties have extensively briefed and argued the issues. [*See* Docket Nos. 1, 3, 6, 8, 12-17, 19, 20, 22, 24, 29, 34, 38, 42, 47, 60, 61, 63-66, 70, 71, 72, 75, 80, 82, 83, 86-88, 90, 91, 93, 94, 99, 102-105, 108, 109, 112-116, 118, 119, 121, 123-128, 130.] [Docket Minute Entries Dec. 2, 2005, Dec. 5, 2005, June 28, 2006, Aug. 10, 2006.] Additionally, on December 2, 2005, this Court held a full day hearing on the Veldekens' Application for Temporary Injunction. Further, the parties reviewed the affidavit evidence and made numerous legal arguments regarding the merits of the Motions for Summary Judgment at the August 10, 2006 hearing, which lasted nearly four hours. [Docket No. 128, p. 56.] The underlying facts and issues have not significantly changed since the December 2005 hearing on the Veldekens' Application for Preliminary Injunction. Between the parties' briefs and the hearings held on these matters, this Court has become well acquainted with the Adversary Proceeding. If the District Court should decide not to withdraw the Referral Order[31], this Court is ready to rule on the merits of the Defendants' Motions for Summary Judgment. Therefore, this factor militates against abstention and in favor of this Court adjudicating the suit to its conclusion.

j.   **The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties**

There is no indication that this proceeding arrived in this Court through forum shopping. Conversely, there is evidence that the Veldekens are forum shopping to escape from this Court. The

---

[31] It must be recalled that the Veldekens, as alternative relief to seeking a remand and abstention by this Court, request the District Court to withdraw the Referral Order. This Court has written a separate Report and Recommendation to this District Court recommending against withdrawal of the Referral Order. A true and correct copy of this Report and Recommendation is attached to this Memorandum Opinion.

Veldekens' attempt, at this late date, to have this Adversary Proceeding remanded to state court is a blatant example of forum shopping. Although the Veldekens originally filed this suit in state court, they did not seek remand after GE removed this suit to federal district court. In fact, they agreed to the referral of the suit to this Court. It was not until after all the Motions for Summary Judgment were filed that the Veldekens, clearly conscious of the fact that this Court had previously ruled against them on their Application for Preliminary Injunction, decided that they wanted to try this suit in state court. Allowing the Veldekens to leave this Court and go back to state court after such delay would only foster improper forum shopping and gamesmanship. It would also unnecessarily increase the legal fees and expenses of all parties, as the state court would inevitably have to spend time becoming familiar with the lawsuit, a task which would assuredly require substantial time and more hearings.[32] Therefore, this factor militates against abstention and in favor of keeping the Adversary Proceeding in this Court.

### k.    The existence of a right to a jury trial

The Veldekens assert that they have a right to a jury trial. The First Amended Complaint states claims for breach of contract, suit to quiet title, negligent misrepresentation, breach of fiduciary duty and numerous others. [Docket No. 12.] This Court recognizes that if the suit had remained in the District Court, the Veldekens would have had a right to a jury trial. *See Ross v. Bernhard*, 396 U.S. 531, 542 (1970); *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962). However, if the Veldekens had a right to jury trial in this suit, this Court finds that they have since waived such right.

---

[32] Whereas, if this Court keeps the Adversary Proceeding, all that is left to be done is to rule on the Motions for Summary Judgment and then hold a trial on any issues for which summary judgment is not granted.

The Veldekens made a demand for a jury trial in the state court suit against GE. [Docket No. 71, Exhibit 4.] They repeated that demand to this Court in their First Amended Complaint, filed on November 4, 2005. [Docket No. 12.] Seven months passed before the Veldekens filed their Motion to Abstain. [Docket No. 88.] This Motion was the first time that the Veldekens took any action to assert their alleged right to a jury trial in the District Court. During the seven-month-period between the Veldekens first claiming the right to a jury trial and the time that they attempted to enforce that right by returning to the District Court, extensive time and resources were devoted to this Adversary Proceeding by the Defendants and the Court: GE filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) [Docket No. 15.]; the Court conducted a full day hearing on the Veldekens' Application for Preliminary Injunction [Docket No. 6.]; all three of the Defendants filed Motions for Summary Judgment [Docket Nos. 66, 70, 83.]; the Court held a three-hour hearing on August 10, 2006 on the Motions for Summary Judgment; and, particularly inconsistent with an intention to seek a jury trial, the Veldekens filed, on May 23, 2006, a Motion for Rule 7016 Scheduling Conference and for Entry of Pretrial Scheduling Order. [Docket No. 80.] The fact that the Veldekens filed a Rule 7016 Motion is evidence that they were contemplating and preparing for this Court to proceed without a jury. The Veldekens' assertion that they have a right to a jury trial is simply another tactic in their attempt at forum shopping.

*IG Services, Ltd. v. Deloitte & Touche, LLP (In re Blackwell)*, 279 B.R. 818 (Bankr. W.D. Tex. 2002) held that a party's right to demand a jury trial can be waived if it fails to seek a timely withdrawal of the reference. *Id.* at 819-820.

> Both the statute and the rules contemplate the party who desires (and needs) withdrawal to affirmatively seek it by motion to the district court. [citations omitted]. If neither party timely takes this additional step (the essential last step to assure that

one gets the jury trial they desire before the tribunal they prefer), then that failure can only be construed as a waiver of the party's right to a jury trial.

. . . .

A party's failure to follow through with the relatively simple procedural steps required to assure that party that they will have their day in court before a jury of their peers ought similarly to be treated as a waiver of that right. In this way, the party with the duty to act is the party who suffers the adverse consequences for failing to act.

*Id.*

*In re Blackwell* did not address how long of a delay in seeking a withdrawal of the reference would be considered so "untimely" as to justify waiver of the right to a jury trial, but courts outside the Fifth Circuit have found waiver in widely varying time frames. The movant in *In re Childs* waited nearly three years after first making a demand for a jury trial to file a motion to withdraw the reference. *Reding v. Gallagher (In re Childs)*, 342 B.R. 823, 825 (M.D. Ala. 2006). In addition to this obviously lengthy delay, the court also took note that the actions taken by the party asking for a withdrawal during this period were inconsistent with a demand for a jury trial:

In this case, [the party seeking a jury trial and withdrawal of the reference] has been a vigorous and seemingly willing participant in nearly three years of litigation in the bankruptcy court without mention of moving the proceedings to district court . . . . [The movant] has waited until the eve of trial, and just after their motion for summary judgment was denied, to file this Motion for Withdrawal. [The movant] concedes that they never raised the issue of their jury demand during conferences held by the bankruptcy court, or otherwise brought it to anyone's attention, other than including the demand in answers, until the instant motion was filed."

*Id.* at 828-829.

Other courts have found much shorter times to be sufficient to justify a finding of waiver of the right to a jury trial based on untimely filing a motion to withdrawal the reference. *J.P. Morgan Partners v. Kelley (In re HA-LO Indus.)*, 326 B.R. 116, 123 (N.D. Ill. 2005) (The movant delayed for 14 months. The court focused on the fact that the date for a bench trial had been set six months

53

prior to the motion for withdrawal of the reference.); *see also Goodwyn v. V Restaurants (In re Goodwyn)*, 2006 Bankr. LEXIS 1464, at *8-9 (Bankr. M.D. Ala. June 19, 2006) (The delay here was only 10 months, but the court gave consideration to the fact that the motion for withdrawal of the reference came only two weeks before trial in the bankruptcy court was scheduled to begin.).

The theme appearing in each of the above cited cases is that the moving party was attempting to resurrect a dormant demand for a jury trial for the sole purpose of forum shopping. The Veldekens delayed seven months from initially making a jury demand in this Court to asking for a withdrawal of the Referral Order. During these intervening months, numerous pleadings and motions were filed, lengthy hearings were held, and orders were entered. The Veldekens' actions throughout each step of this Adversary Proceeding have been inconsistent with an intention to seek a jury trial, including the filing of their Rule 7016 Motion for a Scheduling Conference and for Entry of Pretrial Scheduling Order. If the Veldekens wanted to have a jury trial, they could have filed a Motion to Abstain immediately upon the filing of their First Amended Complaint in November of 2005; their failure to do so requires a finding by this Court that they have waived their right to a jury trial.

If this Court is incorrect and the Veldekens have not waived their right to a jury trial through filing an untimely Motion to Abstain, then the Veldekens have also subjected themselves to the jurisdiction of this Court by filing a proof of claim in the Debtor's Main Case. [Main Case No. 05-35291; Docket No. 556.] Once a claimant files or expresses an intent to file a proof of claim against

54

the estate, the claimant is no longer entitled to a jury trial. *Langekamp v. Culp*, 498 U.S. 42, 44-45 (1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)).[33]

The Veldekens, in order to escape jurisdiction of this Court, attempted to withdraw their proof of claim in the Debtor's Main Case [Main Case No. 05-35291; Docket No. 556.][34] and also tried to orally amend their First Amended Complaint in the Adversary Proceeding to withdraw any claims relating to property of the reorganized Debtor.[35] They asked this Court to allow withdrawal of the claim for accrued lease payments because "such claims and disputes [are] properly within determination in Adversary Case Number 05-3772." *Id.* This admission by the Veldekens provides a sufficient nexus between the claim they filed in the Main Case and the claims they assert in the Adversary Proceeding to warrant a finding that the Veldekens waived their right to a jury trial. This Adversary Proceeding arises out of the July 27, 1998 Loan Agreement and accompanying documents, which this Court has previously found to be one contract. [Docket No. 63, p. 14:1-4.] One of the documents executed on July 27, 1998 was an Assignment of Leases, Rents and Profits executed by the Veldekens in favor of GE's predecessor-in-interest. [Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 3.] Therefore, the issues raised by the Veldekens in the Adversary Proceeding, and the potential result of a final adjudication, bear directly upon the claim filed in the Main Case for future rent: if the Veldekens do not own the Tidwell Property, they

---

[33] However, the right to a jury trial is waived only when the cause of action will directly affect the liability or priority of the filed claim or relates to the process of the allowance or disallowance of claims. *Mirant v. Southern Co.*, 337 B.R. 107, 121 (N.D. Tex. 2006); *see In re Jensen*, 946 F.2d 369, 364 (5th Cir. 1991); *see also Germain v. Ct. Nat'l Bank*, 988 F.2d 1323 (2nd Cir. 1993).

[34] *See* Note 13 *supra*.

[35] *See* Note 30 *supra*.

will have no claim for future rents. Thus, the Veldekens' proof of claim in the Main Case operates as a waiver of their right to a jury trial in the Adversary Proceeding.

### l.      The presence in the proceeding of nondebtor parties

Only non-debtor parties remain in this adversary proceeding. Therefore, this factor weighs in favor of abstention.

### m.      Comity

Although the remaining claims are all state law claims, the outcome of this suit could affect the success of the Plan. There does not appear to be an important or unsettled issue of state law. Rather, the Veldekens have a run of the mill breach of contract claim. Additionally, this Bankruptcy Court, the District Court and the State Courts all share an interest in deterring forum shopping. Thus, there are no state law interests or any interests of the District Court that outweigh the collective judicial interest in stopping forum shopping, which is best served by this suit remaining in this Court. Additionally, this Court will have no problem trying the suit because it is already very familiar with the facts and claims at issue. Therefore, this factor militates against abstention.

### n.      The possibility of prejudice to other parties in the action

If this Court abstains, the three Defendants will be prejudiced because of the additional attorneys' fees and costs they will incur while a state court spends the necessary time to become acquainted with the facts and applicable law in this dispute. Further, they will be prejudiced because of the delay in reaching a final adjudication in state court. This Court has already held a hearing on the pending Motions for Summary Judgment and is prepared to set a prompt trial date if the Motions for Summary Judgment are not granted in full.

### o.      The balance of all the factors weighs against abstention

56

Of the fourteen factors that the Court must consider when determining whether permissive abstention is appropriate, it appears that factors one and eight are inapplicable, factors two and twelve favor abstention, and the remaining ten factors all weigh against abstention. This determination is not a matter of pure arithmetic, and the relative importance of the factors must be weighed. The fact that the Motion to Abstain is a thinly-veiled attempt at forum shopping clearly warrants significant consideration. A theme running throughout several factors is this Court's familiarity with the suit, including the multiple hearings and many briefs filed by the parties. As such, declining abstention would clearly be the most efficient and economical decision.

Conversely, the factors favoring abstention are that only non-debtor parties and state law issues remain. These two factors mirror the Veldekens' argument that this is a non-core proceeding. As discussed under the theory of mandatory abstention, this Adversary Proceeding is still a core proceeding because it deals with liens on property of the reorganized Debtor. Morever, factor seven of the permissive abstention analysis instructs the Court to look beyond the mere form of the proceeding to its true substance, and, as discussed under that factor, the substantive nature of this Adversary Proceeding is such that it would greatly affect the success of the Plan. The fact that the Adversary Proceeding only involves state claims and non-debtor parties is greatly outweighed by the indicia of forum shopping and the other factors. Thus, this Court holds that permissive abstention in the present Adversary Proceeding is not appropriate.

## V. CONCLUSION

This Court finds that the Veldekens are incorrect in asserting that this Court does not have subject matter jurisdiction over the Adversary Proceeding in this Chapter 11 case's post-confirmation period. They are wrong because 1) the correct line of cases to apply under these circumstances deals

with suits filed pre-confirmation; and 2) even if the more exacting test from the post-confirmation case law applies, the application of the test still supports a finding that this Court has subject matter jurisdiction and should adjudicate the dispute.

Under *Garlock*, subject matter jurisdiction should be tested at the time the suit is removed to federal court. The state court suit was filed, removed to District Court, and, by consent, referred to this Court seven months prior to confirmation of the Plan. Therefore, *Wood*'s more liberal test for subject matter jurisdiction under 28 U.S.C. § 1334(b) should apply. This Court  that this Adversary Proceeding could conceivably have an effect on the estate because the result of the Veldekens' suit not only directly affects the administration of the estate but also the success of the Plan. Further, this Court has the power to enter final orders and judgment because the parties consented to such action under 28 U.S.C. § 157(c)(2) in their Agreed Motion for Referral to District Judge Gilmore.

Assuming that this Court is incorrect and the post-confirmation line of cases apply, subject matter jurisdiction is still present under the stricter *Craig's Stores* test because the claims at issue in this suit affect the "implementation or execution of the plan." After considering the factors outlined in *Craig's Stores* and *U.S. Brass,* as synthesized in *Coho Energy* and *Encompass Services,* this Court finds that (1) the Veldekens claims arose prepetition; (2) provisions in the Plan contemplate the continuing jurisdiction of this Court; (3) substantial consummation of the Plan has not occured; (4) the non-debtor parties involved could have a great impact on the success of the Plan; (5) the Court is already familiar with the state law issues involved; and (6) there are strong indices of forum shopping in this Motion to Abstain. Therefore, even under *Craig's Stores*, this Court still has jurisdiction.

58

The Veldekens next claim that should this Court have subject matter jurisdiction, mandatory abstention under 28 U.S.C. § 1334(c)(2) applies. Mandatory abstention is not warranted because (1) the Motion to Abstain was not timely filed; (2) diversity jurisdiction existed at the time the case was removed; (3) the Adversary Proceeding is still core; and (4) the Veldekens failed to meet their burden of showing that the action could be adjudicated timely in state court; indeed, they presented not one shred of evidence on this point.

Finally, the Veldekens ask this Court to exercise permissive abstention under 28 U.S.C. § 1334(c)(1). Permissive abstention is inappropriate because ten of the fourteen factors enumerated in *Broyles* weigh against abstention. This Court gives great weight to the fact that this Motion to Abstain was an attempt at forum shopping. Additionally, many factors favor denying abstention because of the relative ease with which this Court would be able to adjudicate this Adversary Proceeding due to its high degree of familiarity with the facts and legal issues presented.

For the reasons set forth above, this Court denies the Motion to Abstain. A separate order denying the Motion to Abstain will be entered simultaneously with the entry of this Memorandum Opinion on the docket. The Motion to Abstain included a request, in the alternative, for a Recommendation for the Withdrawal of the Referral Order. This Court recommends against the withdrawal of the Referral Order in the attached true and correct copy of the Report and Recommendation to the United States District Court.

Signed this 5th day of October, 2006.

Jeff Bohm
United States Bankruptcy Judge

59

<u>ADDENDUM</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 05-35291** |
| | | **(Chapter 11)** |
| **DOCTORS HOSPITAL 1997, L.P.,** | § | |
| | | |
| **Debtor,** | § | |
| | § | |
| **CHARLES R. VELDEKENS,** | | |
| **ASHRAF VELDEKENS, and** | § | |
| **TIDWELL PROPERTIES, INC.,** | | |
| | § | |
| **Plaintiffs,** | | |
| **v.** | § | **ADVERSARY NO.  05-3772** |
| | | |
| **GE HFS HOLDINGS, INC., et al.,** | § | |
| | | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT
REGARDING MOTION OF CHARLES VELDEKENS, ASHRAF VELDEKENS, AND
TIDWELL PROPERTIES, INC. FOR A RECOMMENDATION FOR THE
WITHDRAWAL OF THE REFERRAL ORDER REFERRING THIS ADVERSARY
PROCEEDING TO THIS BANKRUPTCY COURT**

## I. INTRODUCTION

On April 6, 2005, Doctors Hospital 1997, L.P. (**the Debtor**) filed for Chapter 11 in the

United States Bankruptcy Court for the Southern District of Texas, Houston Division. [Docket No.

1.][1]   On August 19, 2005, Charles R. Veldekens, Ashraf Veldekens, and their privately-held

---

[1] Docket No. references are to the docket in Adversary Proceeding Number 05-3772, except that any
references that begin with the phrase "Main Case" refer to docket entries in the Debtor's Chapter 11 case.

1

company, Tidwell Properties, Inc. (collectively hereinafter referred to as **the Veldekens**) filed suit against GE HFS Holdings, Inc. **(GE)** in the District Court of Harris County, Texas. [Docket No. 71, Attach. 4.] On September 30, 2005, GE removed this state court lawsuit to the United States District Court for the Southern District of Texas, Houston Division. [Civil Action No. 4:05-cv-03381, Docket No. 1.] Upon removal, this suit was assigned to the Honorable Vanessa D. Gilmore and given Civil Action No. 05-CV-03381. *Id.* On October 14, 2005, the Veldekens and GE filed an Agreed Motion for Referral to the U.S. Bankruptcy Court for the Southern District of Texas, Houston, Division. [Docket No. 104, Ex. A.] On October 18, 2005, the Honorable Vanessa D. Gilmore signed an Order granting the Agreed Motion for Referral to Bankruptcy Court. [Docket No. 1.] This Order referred the lawsuit to the undersigned bankruptcy judge **(the Referral Order)**. This Order also stated that "pursuant to 28 U.S.C. § 157, and based on the consent of the parties, the Bankruptcy Court may hear and determine this action, and may enter appropriate final orders or judgment." *Id.*

Immediately after the Referral Order was docketed, the Clerk of Court assigned this suit Adversary Proceeding No. 05-03772 and noted on the docket that the Veldekens were seeking to recover money and property. [Docket No. 1.] Since District Judge Gilmore referred this lawsuit to this Court, there have been numerous motions and briefs filed on a multitude of issues, and as of the date of this Report and Recommendation, there are 134 entries on the docket. On November 4, 2005, the Veldekens filed their First Amended Complaint adding two defendants: Newbanks, Inc. **(Newbanks)** and Clifton D. Thomason **(Thomason)**. [Docket No. 12.] On March 16, 2006, GE filed a Motion for Summary Judgment [Docket No. 66.]; on April 4, 2006, Newbanks filed its Motion for Summary Judgment [Docket No. 70.]; and on May 30, 2006, Thomason filed his own Motion for

2

Summary Judgment. [Docket No. 83.] On June 16, 2006, the Veldekens filed a Motion to Abstain and to Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to the Bankruptcy Court by the United States District Court. [Docket No. 88.] Then, on June 23, 2006, the Veldekens filed their Amended Motion to Abstain and to Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to the Bankruptcy Court by the United States District Court (**the Amended Motion**). [Docket No. 99.] This Court has spent substantial time adjudicating various matters in this Adversary Proceeding, including a lengthy hearing on December 2, 2005 on the Veldekens' Application for a Preliminary Injunction against GE—which was denied—as well as two hearings on June 28, 2006 and August 10, 2006 on the Defendants' Motions for Summary Judgment.

This Court views the Amended Motion as a blatant attempt by the Veldekens to forum shop. Unhappy with this Court's denial of their Application for Preliminary Injunction, and worried that this Court will grant the Defendants' pending Motions for Summary Judgment, the Veldekens have decided to attempt to have some other court adjudicate the lawsuit. In the first instance, they want to return to the Harris County District Court; in the alternative, they want the suit to be returned to the United States District Court for the Southern District of Texas. This Court has already issued an order, together with a Memorandum Opinion, denying the Veldekens' request for this Court to abstain and remand the suit to Harris County District Court.[2] Having denied this relief, this Court now turns to the request by the Veldekens for a recommendation as to whether the Referral Order should be withdrawn so that the suit can be adjudicated in the United States District Court. This

---

[2] A copy of the Memorandum Opinion on the Amended Motion regarding the abstention and remand issues is attached to this Report and Recommendation.

3

Court interprets the relief requested by the Veldekens as the same relief a party would request if the suit had initially been filed in the bankruptcy court and a motion to withdraw the reference was thereafter filed. Accordingly, pursuant to Local Bankruptcy Rule 5011, this Court now makes its Report and Recommendation to the United States District Court as to whether the Referral Order should be withdrawn.

II.    **SUMMARY OF RECOMMENDATION**

This Bankruptcy Court recommends that the District Court **not** withdraw the Referral Order.

III.    **RELEVANT PROCEDURAL BACKGROUND OF THIS BANKRUPTCY CASE AND THIS ADVERSARY PROCEEDING**

1.    Mr. Veldekens and Dr. Veldekens owned land located at 510 West Tidwell Road in Houston, Harris County, Texas and certain improvements on the land, including a hospital facility (all of which property and improvements are hereinafter collectively referred to as **the Tidwell Property**). [Docket No. 12, ¶ 13.]

2.    On or about January 23, 1998, Mr. Veldekens and Dr. Veldekens entered into a Lease Agreement with the Debtor, whereby Mr. Veldekens and Dr. Veldekens leased the Tidwell Property to the Debtor. [Docket No. 63, p. 2:8-14, 18-19; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 1.] The Debtor is a Limited Partnership based in Houston, Texas, and was founded in January of 1998 for the purpose of leasing and operating the hospital facility located on the Tidwell Property in north Houston. [Docket No. 6, ¶ 6.]

3.    On or about July 27, 1998, the Debtor borrowed $7 million from HCFP Funding II, Inc. (**the Loan**) pursuant to a Loan Agreement. [Dec. 2, 2005 Hrg. on Veldekens' Application for

4

Prelim. Inj., Joint Ex. 12.] Defendant GE was the most recent holder and owner of the Loan

Agreement and all other instruments at issue in this Adversary Proceeding. [Docket No. 63,

p. 8:25, 9:1-6; *see* Docket No. 63, p. 2:21-24.]

4.      On or about July 27, 1998, Mr. Veldekens, Dr. Veldekens, and the Debtor executed the

Assignment of Leases, Rents and Profits in favor of HCFP Funding II, Inc.  [Docket No. 63,

p. 3:3-6; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 3.]

5.      On or about July 27, 1998, Mr. Veldekens, Dr. Veldekens, and the Debtor executed a Deed

of Trust and Security Agreement for the benefit of HCFP Funding II, Inc.  [Docket No. 63,

p. 3:7-11; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 4.]  GE

was the most recent holder and owner of the Deed of Trust and Security Agreement.  [Docket

No. 63, pp. 8:25, 9:1-6; *see* Docket No. 63, p. 2:21-24.]

6.      On or about July 27, 1998, Mr. Veldekens and Dr. Veldekens, as guarantors, also executed

a Limited Guaranty Agreement with HCFP Funding II, Inc. [Docket No. 63, pp. 2:15-18,

3:24-25, 4:1-2; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 2.],

which specifies the following:

> D.      The proceeds from the Loan shall be used by [the Debtor] to
> construct new improvements on, and substantially renovate existing
> improvements on, the Facility and upon [the Tidwell Property], and therefore
> [Mr. Veldekens and Dr. Veldekens], as owner of the fee simple interest in the
> Property, will receive substantial benefits and increase in the value of its
> property from the making of the Loan to the [the Debtor].

> E.      In consideration of the benefits to be received by the [Mr.
> Veldekens and Dr. Veldekens] by the making of the Loan to the [the Debtor]
> and subject to the express limitation on personal liability set forth in Section
> 22, the [Mr. Veldekens and Dr. Veldekens have] agreed to execute and
> deliver to [HCFP Funding II, Inc.] this Guaranty.

[Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 2, Recitals D, E.]

GE was the most recent holder and owner of the Limited Guaranty Agreement. [Docket No. 63, pp. 2:21-24, 8:25, 9:1-6.]

7.      On or about November 6, 1998, Mr. Veldekens, Dr. Veldekens, and the Debtor executed the First Amendment to Deed of Trust and Security Agreement for the benefit of HCFP Funding II, Inc. [Docket No. 63, p. 3:12-15; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 5.] GE was the most recent holder and owner of the First Amendment to Deed of Trust and Security Agreement. [Docket No. 63, pp. 8:25, 9:1-6; *see* Docket No. 63, p. 2:21-24.]

8.      On or about December 22, 1999, Mr. Veldekens, Dr. Veldekens, and the Debtor executed the Second Amendment to Deed of Trust and Security Agreement for the benefit of Heller Healthcare Finance, Inc.  [Docket No. 63, p. 3:16-19; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 6.] Heller Healthcare Finance, Inc. was the successor to HCFP Funding II, Inc. and became the holder of the instruments HCFP Funding II, Inc. originally held. [Docket No. 63, p. 3:19-23; *see* Docket 71, Ex. 2, ¶ 11.] GE was the most recent holder and owner of the Second Amendment to Deed of Trust and Security Agreement. [Docket No. 63, pp. 8:25, 9:1-6; *see* Docket No. 63, p. 2:21-24.]

9.      Since purchasing the Tidwell Property in 1992 for $7.3 million, Mr. Veldekens and Dr. Veldekens received income therefrom in the form of lease payments from the Debtor and fees from sitting on the governing board, among other income. [Docket No. 63, p. 11:1-6.] The amount of income that Mr. Veldekens and Dr. Veldekens received totaled approximately $10.3 million. [Docket No. 63, p. 11:6-8.]

10.      Mr. Veldekens and Dr. Veldekens transferred title to the Tidwell Property to Plaintiff

6

Tidwell Properties, Inc. by a warranty deed filed in Harris County, Texas on December 26, 2002. [Docket No. 12, ¶ 13.] Pursuant to Federal Rule of Evidence 201(a), (b), (c),[3] this Court takes judicial notice of the Texas Secretary of State Business Organization records, which indicate that **Charles Veldekens is the registered agent and sole officer and director of Tidwell Properties, Inc.**

11.     On April 6, 2005, the Debtor filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  [Main Case No. 05-35291; Docket No. 1.]

12.     On August 19, 2005, the Veldekens[4] filed suit against GE in the 334th Judicial District of Harris County, Texas **(the State Court Lawsuit)**. [Docket No. 71, Exhibit 4.] The Original Petition in this State Court Lawsuit alleged that: (1) the Veldekens had leased the Tidwell Property to the Debtor; (2) the Debtor's lenders[5] had agreed to issue loans to the Debtor solely for the construction of improvements on the Tidwell Property; (3) GE is a Delaware corporation doing business in Texas and acquired the Debtor's lenders;[6] (4) the Veldekens had agreed to grant the Debtor's lenders a lien upon the Tidwell Property only to the extent

---

[3]The Federal Rules of Evidence apply to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 1101(a), (b).

[4] It is worth reiterating that the phrase "the Veldekens" refers not only to Mr. Veldekens and Dr. Veldekens, but also Tidwell Properties, Inc.

[5]The Veldekens' suit alleged that the Debtor's lenders were Heller Healthcare Finance, Inc. and HCFP Funding, Inc., a/k/a HCFP Funding II, Inc.  [Docket No. 71, Ex. 2, ¶ 11.] GE is the successor in interest to these entities.

[6]The Veldekens' Original Petition alleges that GE "is, based on knowledge and belief, a Delaware Corporation doing business in Texas." [Docket No. 6, Ex. 7, ¶ 6.]  Pursuant to Federal Rule of Evidence 201(a), (b), (c), this Court takes judicial notice of the Texas Secretary of State Business Organization records, which indicate that GE is a Connecticut Corporation, with "Jurisdiction" in "DE/USA."

that the lenders extended loans to the Debtor for improvements on the Tidwell Property; and (5) the lenders made loans to the Debtor for purposes other than the construction of improvements on the Tidwell Property, thereby encumbering the Veldekens' fee simple interest in the property with liens related to loans "for purposes totally unrelated to improving the Tidwell Property, including purchasing a separate hospital facility on a different property not owned by the [Veldekens]." [*Id.* at ¶¶ 6, 9, 11, 13, 14.]

13.   The State Court Lawsuit sought relief under the following causes of action: breach of contract, suit to remedy cloud/suit to quiet title, fraudulent inducement, fraud, and negligent misrepresentation. [*Id.* at ¶¶ 15-53.] The State Court Lawsuit also sought damages, exemplary damages, attorney's fees, and the following declaratory relief: (1) "to have the [Tidwell] Property immediately delivered back to [the Veldekens'] possession;" (2) "to have the cloud on [the Veldekens'] title created by the alleged liens on their interest in the [Tidwell] Property vacated and cancelled;" and (3) "If possession of the [Tidwell] Property is not immediately delivered back to [the Veldekens] and the cloud on [the Veldekens' title created by Heller/GE's alleged lien is not remedied, then [the Veldekens] seek to disgorge from Heller/GE's unjust enrichment, either through a return of the Loans that [the Debtor] unjustly received or a constructive trust placed upon any interest Heller/GE has in the [Tidwell] Property." [*Id.* at ¶¶ 54-58.]

14.   On September 30, 2005, GE removed the State Court Lawsuit to the United States District Court for the Southern District of Texas, Houston Division (**the District Court**), where it was assigned Civil Action No. 4:05-cv-03381 and assigned to the Honorable Vanessa D. Gilmore, United States District Judge. [Civil Action No. 4:05-cv-03381, Docket No. 1.]

8

15.   In a letter to Charles and Ashraf Veldekens dated October 7, 2005, GE demanded payment of $15,540,000.00 in indebtedness under the documents executed on July 27, 1998. [Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 18; Docket No. 6, Ex. 11.] The letter also included a Notice of Substitute Trustee's Sale, which set forth that: (1) the Veldekens granted liens pursuant to the Deed of Trust to "secure a Limited Guaranty Agreement . . . dated as of July 27, 1998, executed jointly and severally by [the Veldekens] to secure indebtedness (the "Debt");" (2) GE was the current owner of the liens; and (3) "default has occurred in the payment of the Debt," which had matured, so that GE "authorized and directed the Substitute Trustee to file, post and mail this Notice of Substitute Trustee's Sale and to sell the Property and apply the proceeds against the Debt, as provided in the [Limited] Guaranty [Agreement]." The letter and the Notice of Substitute Trustee's Sale indicated that the sale would occur on November 1, 2005. *Id.*

16.   On October 14, 2005, the Veldekens and GE jointly filed the following motion in the removed suit (bearing Civil Action No. 4:05-cv-03381) pending before District Judge Gilmore: Agreed Motion for Referral to the United States Bankruptcy Court for the Southern District of Texas, Houston Division (**the Agreed Motion for Referral**). [Docket No. 104, Ex. A.] This Agreed Motion for Referral made the following representations to District Judge Gilmore:

> Plaintiffs Charles R. Veldekens, Ashraf Veldekens, and Tidwell Properties, Inc. ("Plaintiffs") and defendant GE HFS Holdings, Inc. ("GE HFS"), formerly known as Heller Healthcare Finance, Inc. and, before that, HCFP Funding, Inc., and the successor in interest to HCFP Funding II, Inc., *jointly move the Court to refer this case to the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division.*
> . . . .
> *Both parties now move the Court to refer this case to the Bankruptcy Court,*

9

*which is familiar with the dispute at issue.*

2.      Currently pending before the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division (Bohm, J.) (the "Bankruptcy Court") is a Chapter 11 bankruptcy, Cause No. 05-35291-H4-11, styles *In re Doctors Hospital 1997, L.P.* Doctors Hospital 1997, L.P. is the lessee of the real property which is the subject of this case. Further, already pending in Bankruptcy Court is Adversary Proceeding No. 05-3315, in which the Plaintiffs assert claims similar to the ones Plaintiffs brought in this matter. *The parties agree that the Bankruptcy Court is the appropriate forum to resolve the parties' dispute.*

3.      *The parties agree that the Bankruptcy Court may hear and determine this case, and may enter appropriate final orders or judgment, pursuant to 28 U.S.C. § 157. To the extent necessary, the parties consent to the entry of final orders or judgment in this case by the Bankruptcy Court.*

*Id.* (emphasis added).

17.     On October 18, 2005, District Judge Gilmore signed an agreed order referring the suit (Civil Action No. 4:05-cv-3381) to this Bankruptcy Court. [Docket No. 1.] This order was entered on the docket on October 19, 2005. *Id.*

18.     Upon referral of this suit from the District Court to this Court, the Clerk of Court assigned this suit Adversary Proceeding No. 05-3772 (**the Adversary Proceeding**).

19.     On October 31, 2005, the Veldekens filed their Verified Emergency Application for Temporary Restraining Order and Preliminary Injunction, requesting that this Bankruptcy Court enjoin the foreclosure sale of the Tidwell Property scheduled for November 1, 2005. [Docket No. 6, ¶ 39.]

20.     On November 4, 2005, in the main case, the Debtor filed its Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code. [Main Case No. 05-35291; Docket No. 357.]

21.     On November 4, 2005, the Veldekens filed their Verified First Amended Complaint Pursuant

10

to 11 U.S.C. §§ 362 and 105(a) and Application for Preliminary Injunction. [Docket No. 12.] The Veldekens added two defendants—Newbanks and Thomason—as parties to the Adversary Proceeding. [*Id.* at ¶¶ 10-11.] The Veldekens alleged that Newbanks is a foreign corporation with its place of business in Texas and that Thomason is an architect with his principal place of business in Texas. *Id.* The Veldekens' First Amended Complaint alleged that Thomason and Newbanks were acting as authorized agents of GE [*Id.* at ¶ 80.] when they failed to perform GE's contractual obligations [*Id.* at ¶ 39.] and made negligent misrepresentations. [*Id.* at ¶ 50.] The Veldekens also asserted causes of action under the Texas Deceptive Trade Practices Act [*Id.* at ¶ 65] and alleged a conspiracy among GE, Thomason, and Newbanks. [*Id.* at ¶ 77.]

22.   On December 2, 2005, this Court held a full day hearing on the Veldekens' Application for Preliminary Injunction. [Docket No. 6.]

23.   On December 5, 2005, this Court announced, from the bench, its oral Findings of Fact and Conclusions of Law and denied the Veldekens' Application for Preliminary Injunction. [Docket Nos. 60, 63.] With this Court's refusal to issue a preliminary injunction, GE soon thereafter foreclosed its lien on the Tidwell Property.

24.   In denying the Veldekens' Application for Preliminary Injunction, the Court found that the Veldekens failed to satisfy all four prerequisites for obtaining a preliminary injunction, which the Fifth Circuit has set forth as the follows: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will

not disserve the public interest." *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). [Docket No. 63, pp. 12:20-25, 13:1-10, 29:5-8.]

25.     On December 15, 2005, Defendant Newbanks filed its Answer to the Veldekens' First Amended Complaint. [Docket No. 61.]

26.     On January 24, 2006, the Debtor filed its First Amended Chapter 11 Plan. [Main Case No. 05-35291; Docket Nos. 469, 473.][7]

27.     On February 10, 2006, the Debtor filed its Second Amended Chapter 11 Plan. [Main Case No. 05-35291; Docket No. 504.]

28.     On March 3, 2006, the Debtor filed an additional Second Amended Chapter 11 Plan. [Main Case No. 05-35291; Docket No. 530.][8]

29.     On March 16, 2006, GE filed its Motion for Summary Judgment. [Docket No. 66.]

30.     On March 31, 2006, the Veldekens filed their Motion for Withdrawal of Claim Pursuant to FED. R. BANKR. P. 3006, stating that the disputes related to the Lease Agreement were "properly within determination" of this Court in this Adversary Proceeding. [Main Case No. 05-35291; Docket No. 556, ¶ 4.]

31.     On the same day, the Veldekens filed their Objection to Confirmation of the Debtor's Second Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code and Supporting Memorandum of Charles Veldekens, Ashraf Veldekens, and Tidwell Properties, Inc. [Main

---

[7] The docket in the Main Case shows that on the same date, January 24, 2006, two documents titled "Debtor's First Amended Plan of Reorganization" were filed. There is a slight variation between the two documents and the second entry should have been correctly titled Second Amended Plan of Reorganization.

[8] Again, the Debtor filed two slightly varying documents with identical titles. In light of the two "first" Amended Plans that were filed, these documents should have been titled the third and fourth Amended Plans.

12

Case No. 05-35291; Docket No. 557.]

32.     On April 4, 2006, Newbanks filed its Motion for Summary Judgment. [Docket No. 70.]

33.     On April 5, 2006, the Debtor filed its Plan Supplement with respect to Debtor's Second
Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code, relating to the
Disclosure Statement and Second Amended Chapter 11 Plan filed at Docket Nos. 529 and
530 [Main Case No. 05-35291; Docket No. 577], submitting draft forms of certain
documents necessary to implement the Plan. [*See* Main Case No. 05-35291; Docket No.
620, at ¶ 12.]

34.     On May 8, 2006, the Debtor filed a modified Second Amended Chapter 11 Plan. [Main Case
No. 05-35291; Docket No. 619.][9]

35.     On May 8, 2006, this Court entered its Order Confirming Debtor's Second Amended Plan
of Reorganization under Chapter 11 of the United States Bankruptcy Code, as Modified
relating to the Second Amended Plan at Docket No. 619 (**the Plan**). [Main Case No. 05-
35291; Docket No. 621.] Counsel for the Veldekens appeared at this confirmation hearing
to withdraw the Veldekens' prior objection to confirmation of the Plan. *Id.*

36.     The Plan calls for Healthcare Financial Services Realty, LLC, an affiliate of GE, to transfer
the Tidwell Property to the reorganized Debtor, or to Tidwell/Parkway Realco, a holding
company of the reorganized Debtor. In exchange, the reorganized Debtor will have a new
$2.5 million obligation to GE and GE will have senior liens and security interests in the
Tidwell Property. [*Id.*, Ex. B, Art. 8.9.]

---

[9] At least three versions of the Debtor's Second Amended Plan appear on the docket. This final
version, which modifies the version filed on March 3, 2006, is the Second Amended Plan that was eventually
confirmed. [*See* Finding of Fact No. 35]

37.    On May 23, 2006, the Veldekens filed a Motion for a Rule 7016 Scheduling Conference and for Entry of Pretrial Scheduling Order. [Docket No. 80.]

38.    On May 30, 2006, Thomason filed his Answer to the Veldekens' First Amended Complaint. [Docket No. 82.]

39.    On May 30, 2006, Thomason filed his Motion for Summary Judgment. [Docket No. 83.]

40.    On June 5, 2006, this Court signed an Order Authorizing and Approving Proposed Exit Financing and Related Loan Documentation in Connection with Debtor's Second Amended Plan of Reorganization under Chapter 11 of the United State Bankruptcy Code, as Modified. [Main Case No. 05-35291; Docket No. 646.] In the Order, this Court found that "the exit financing is a necessary and integral part of the Plan." [*Id.* at 2.]

41.    On June 9, 2006, GE filed its Response to the Veldekens' Motion for Rule 7016 Scheduling Conference. [Docket No. 86.]

42.    On June 15, 2006, the Veldekens filed their Response to Thomason's Motion for Summary Judgment. [Docket No. 87.]

43.    On June 16, 2006, the Veldekens filed a Motion to Abstain and to Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to the Bankruptcy Court by the United States District Court. [Docket No. 88.]

44.    On June 20, 2006, Newbanks filed a Motion for More Definite Statement [Docket Nos. 90, 91.], Joinder in Defendant GE's Response to Motion for Rule 7016 Scheduling Conference [Docket No. 93.], and Reply in Support of Summary Judgment. [Docket No. 94.]

45.    On June 23, 2006, the Veldekens filed the Amended Motion. [Docket No. 99.]

46.    On June 27, 2006, GE, Newbanks, and Thomason (collectively, **the Defendants**) filed a

Joint Motion In Opposition to the Veldekens' Motion to Abstain and to Remand. [Docket No. 104.]

47.     On the same day, the Defendants filed their First Amended Joint Opposition to Plaintiffs' Motion to Abstain and Remand. [Docket No. 109.]

48.     On June 27, 2006, the Veldekens also filed their Supplemental Response to Defendants' Motions for Summary Judgment. [Docket No. 108.]

49.     On June 28, 2006, the Veldekens filed their Reply in Support of Motion to Abstain and Remand and, Alternatively, for a Recommendation for the Withdrawal of the Referral Order Referring this Case to Bankruptcy Court by the United States District Court. [Docket No. 112.]

50.     On June 28, 2006, the Court held a hearing lasting approximately two hours on the Amended Motion and the Defendants' Motions for Summary Judgment. [Docket Entry June 28, 2006.] Most of this hearing concerned arguments on the Amended Motion. At the close of the hearing, the Court asked both parties to file post-hearing briefs. The Court continued the hearing on the Motions for Summary Judgment and the Amended Motion until August 10, 2006. *Id.*

51.     On June 30, 2006, the Plan became effective. [Main Case No. 05-35291; Docket No. 663.]

52.     On July 14, 2006, the Defendants filed their Joint Hearing Brief Regarding Plaintiffs' Motion for Remand. [Docket No. 115.]

53.     On August 4, 2006, the Veldekens filed their Post-Hearing Brief in Support of the Motion. [Docket No. 116.]

54.     On August 9, 2006, GE filed its Response to Plaintiffs' Post-Hearing Brief in Support of

15

Motion to Remand. [Docket No. 121.]

55.     On August 10, 2006, the Court reconvened the hearing on the Amended Motion and the

Defendants' Motions for Summary Judgment. [Docket Entry Aug. 10, 2006.] This hearing

lasted approximately four hours.  The parties reviewed the affidavit evidence and made

numerous legal arguments regarding the merits of the Motions for Summary Judgment.  The

Court orally announced that it had decided to deny the Amended Motion,[10] and would be

issuing a written opinion to that effect.  The Court also stated that it would be submitting a

Report and Recommendation to the District Court recommending against withdrawal of the

Referral Order.  Finally, this Court determined that it was appropriate to delay ruling on the

Motions for Summary Judgment until the District Court makes a decision on the Report and

Recommendation. *Id.*

56.     On August 25, 2006, Newbanks and Thomason filed their Separate Supplement to All

Defendants' Supplemental Brief in Support of Motion for Summary Judgment and GE's

Advisory to the Court Re: Motion to Strike.  [Docket No. 124.]

57.     On August 25, 2006, the Veldekens filed their Post-Hearing Brief in Opposition to

Defendants' Motions for Summary Judgment [Docket No. 125] and Post-Hearing Brief in

Opposition to Defendants' Motions for Summary Judgment. [Docket No. 126]

**IV.     DISCUSSION OF THE MERITS OF THE VELDEKENS' REQUEST THAT THE
DISTRICT COURT WITHDRAW ITS REFERRAL ORDER OF OCTOBER 18, 2005**

   **A.     Procedural History of the Adversary Proceeding and Applicable Fifth Circuit
   Case Law for Determining Whether the Referral Order Should be Withdrawn**

---

[10] This Court denied the Amended Motion only as to the abstention and remand issues.

General Order 2005-6 of the United States District Court for the Southern District of Texas provides that "Bankruptcy cases and proceedings arising under Title 11 or arising in or related to a case under Title 11 of the United states Code are automatically referred to the bankruptcy judges of this District . . . ." *See also* 28 U.S.C. § 157(a). When the Debtor filed its Chapter 11 petition in the District Court, the case was immediately referred to this Bankruptcy Court pursuant to the General Order.

The Veldekens owned the land on which one of the Debtor's two hospitals was operated. [Docket No. 12.] The dispute in this Adversary Proceeding arises out of a loan from GE's predecessor in interest to the Debtor that was guaranteed by the Veldekens. [Docket No. 63, p. 3:7-11; Dec. 2, 2005 Hrg. on Veldekens' Application for Prelim. Inj., Joint Ex. 4.] The Veldekens originally filed suit in state court [Docket No. 71, Attach. 4.], and GE removed the case to the District Court based on either of two independent grounds: (1) diversity jurisdiction pursuant to 28 U.S.C. § 1332; and (2) arising under, or arising in, or related to a case under title 11 pursuant to 28 U.S.C. § 1334(b). [Civil Action No. 4:05-cv-03381, Docket No. 1.] The suit arrived in this Bankruptcy Court as a result of the parties' request to District Judge Gilmore that she refer the dispute to the undersigned bankruptcy judge. [Docket No. 104, Ex. A.] Since the referral of this suit, this Court has held numerous hearings, including the hearings on the Veldekens' Application for Preliminary Injunction (Dec. 2, 2005 and Dec. 5, 2005) and the Defendants' Motions for Summary Judgment (June 28, 2006 and Aug. 10, 2006).

As a party to the Adversary Proceeding, the Veldekens may move for withdrawal of the Referral Order, and the District Court may grant that motion for "cause shown." 28 U.S.C.

17

§157(d).[11]   Bankruptcy Local Rule 5011 requires the Veldekens to present their request for withdrawal to this Court, which then makes a recommendation to the District Court as to whether to grant or deny the Motion.

In *Holland America*, the Fifth Circuit held that in determining whether a movant has shown cause under 28 U.S.C. § 157(d) to withdraw the reference, a district court should consider the following issues: (1) whether the underlying lawsuit is a core or non-core proceeding; (2) whether promotion of uniformity in bankruptcy administration will be achieved; (3) whether forum shopping and confusion will be reduced; (4) whether there will be economical use of debtors' and creditors' resources; (5) whether the withdrawal of reference will expedite the bankruptcy process; and (6) whether a party has demanded a jury trial. *Holland America Ins. Co. v. Roy*, 777 F.2d 992, 999 (5th Cir. 1985); *see also Mirant Corp. v. Southern Co.*, 337 B.R. 107, 115 (N.D. Tex. 2006) (considering *Holland America* factors in determination of motion to withdraw reference). This Court's review of these issues leads to the recommendation that the District Court *not* withdraw the Referral Order.

**B.    Application of the six *Holland America* factors to this Adversary Proceeding**

1. *The Adversary Proceeding is a core proceeding.*

28 U.S.C. § 157 governs core proceedings. While this section does not specifically define core proceedings, subsection (b)(2) provides a comprehensive, yet non-exclusive, list of core proceedings. *In re Baudoin*, 981 F.2d 736, 740-41 (5th Cir. 1993); *Wood*, 825 F.2d at 95; *Mirant*, 337 B.R. at 116. This list includes very specific proceedings and very broad proceedings. Some

---

[11]In pertinent part, 28 U.S.C. § 157(d) reads as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

18

examples of specific core proceedings include preference actions, 28 U.S.C. § 157(b)(2)(F), and fraudulent conveyance suits, 28 U.S.C. § 157(b)(2)(H). Broad categories of core proceedings include "all matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), and "other proceedings affecting the liquidation of assets of the estate," 28 U.S.C. § 157(b)(2)(O). The Fifth Circuit warns against a broad interpretation of 28 U.S.C. § 157(b)(2)(O) and prefers to deem a proceeding as core under the more specific examples rather than fitting a particular proceeding into the catch-all language of subsections (b)(2)(A) and (b)(2)(O). *See Wood*, 825 F.2d at 95; *Mirant*, 337 B.R. at 116. Nevertheless, the Fifth Circuit has not limited the definition of core proceedings solely to the specific examples set forth in the laundry list of 28 U.S.C. § 157(b)(2). Rather, the Fifth Circuit has defined a core proceeding as one which "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood*, 825 F.2d at 97. When determining whether a proceeding is core, a court must consider both the form as well as the substance of the proceeding. *Id.* (citing *In re World Fin. Servs. Ctr., Inc.*, 64 B.R. 980, 984-87 (Bankr. S.D. Cal. 1986)).

With respect to the Adversary Proceeding at bar, the category most likely to make this lawsuit a core proceeding is 28 U.S.C. § 157(b)(2)(K) because the Veldekens, in their First Amended Complaint, seek to invalidate GE's liens on the Tidwell Property. There is a split of authority on whether the liens referred to in 28 U.S.C. § 157(b)(2)(K) must relate only to property of the estate or can also relate to property of the debtor. One line of cases follows a more lenient rule that in order for 28 U.S.C. § 157(b)(2)(K) to apply, the lien may relate to either property of the estate *or* of the debtor. *Continental Nat'l Bank v. Sanchez (In re Toldeo)*, 170 F.3d 1340, 1347 (11th Cir. 1999); *Hasset v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748 (S.D.N.Y. 1994); *In re Rarick*, 132

19

B.R. 47, 51 (D. Colo. 1991); *In re Grell*, 83 B.R. 652, 657 (Bankr. D. Minn. 1988).

The stricter line of cases holds that the lien may *only* relate to the property of the estate. *In re Huff*, 44 B.R. 129, 134 (Bankr. W.D. Ky. 1984); *In re Climate Control*, 51 B.R. 359, 361 (Bankr. M.D. Fla. 1985); *Citibank v. Park-KenilWorth Industries,* 109 B.R. 321, 325 (N.D. Ill. 1989); *In re Coan*, 95 B.R. 87, 89 (N.D. Ill. 1988); *In re Israel*, 112 B.R. 481, 483 (Bankr. D.Conn. 1990). The only court within the Fifth Circuit to address this issue followed this latter approach, limiting the scope of 28 U.S.C. § 157(b)(2)(K) to property of the estate, but not property of the debtor. *In re Jeter*, 48 B.R. 404, 406 n.1 (Bankr. N.D. Tex. 1985).

Other subsections of 28 U.S.C. § 157(b)(2) include explicit references to either "property of the estate" (28 U.S.C. § 157(b)(2)(E)) or "claims against the estate" (28 U.S.C. § 157(b)(2)(B) and (C)), but 28 U.S.C. § 157(b)(2)(K) is silent as to any limitation on either property of the estate or of the debtor. *See In re Blackmann*, 55 B.R. 437, 447 n.8 (Bankr. D.C. 1985). The need for limits on 28 U.S.C. § 157(b)(2)(K) arises from the fact that a plain reading without any limitations would allow bankruptcy courts to assert "a form of jurisdiction *ferae naturae,* capable of the rampant adjudication of property rights wherever found and by whomever owned." *In re Huff*, 44 B.R. at 134. However, this policy consideration is served equally by including liens on property of the debtor in addition to property of the estate. Therefore, this Court disagrees with *In re Jeter*, the only court within the Fifth Circuit addressing this point, and believes that the more persuasive approach includes liens on property of the debtor under 28 U.S.C. § 157(b)(2)(K).

The liens in the present suit present a new challenge because they do not relate to property of either the estate or the debtor; rather they are liens on property which belongs to the *reorganized* Debtor. The estate ceased to exist upon confirmation of the Plan; that event also transformed the

20

Debtor into the reorganized Debtor. As discussed above, *Wood* instructs a court to look beyond form

to the substance of a proceeding in determining whether or not it is core. Here, the validity of the

lien in question is vital to the success of the Plan. It is not only the validity of GE's current lien on

the Tidwell Property that is necessary to the Plan; equally important is the validity of GE's original

lien upon which it foreclosed. The Veldekens' First Amended Complaint asks this Court to

invalidate that original lien and restore title in the Tidwell Property to the Veldekens. Such a result

would undoubtedly alter the likelihood of success of the Plan.[12]  Therefore, looking beyond mere

form to the substance of the proceeding, this Court believes that 28 U.S.C. § 157(b)(2)(K) should

include liens on property of the reorganized Debtor. Accordingly, this Adversary Proceeding is still

a core proceeding under 28 U.S.C. § 157(b)(2)(K) despite the termination of the bankruptcy estate.[13]

In sum, the Adversary Proceeding is core because it involves the validity of a lien on property

of the reorganized Debtor. Therefore, this factor weighs against withdrawing the Referral Order.

---

[12] Part of the relief requested by the Veldekens is for this Court to declare that the liens claimed by GE on the Tidwell Property are invalid and that the Tidwell Property belongs to the Veldekens free and clear of these allegedly invalid liens. [Docket No. 6, Ex. 7. at ¶¶ 25, 54, 55] Invalidating GE's liens on the Tidwell Property and conveying title of the Tidwell Property to the Veldekens could negatively alter the Debtor's course of action because the Debtor would probably no longer have the option of obtaining financing from GE. GE has been extending financing to the Debtor, both prior to the bankruptcy filing and thereafter. GE provided such financing under the express understanding that its liens on the Tidwell Property are valid. A judgment from this Court invalidating these liens could conceivably jeopardize the Debtor's ability to obtain working capital financing to operate the hospital and pay ongoing bills. Such a scenario could easily lead to a shutdown of the hospital's operations, which would probably destroy any chance of claims being paid pursuant tao the confirmed Plan. Such a result could substantially impact the bankruptcy process.

[13] If liens on property of the reorganized Debtor are not included under § 157(b)(2)(K), then the only other provision that this Adversary Proceeding could classify as core under would be 28 U.S.C. § 157(b)(O), and, as already discussed, the Fifth Circuit's interpretation of this broad catch-all section is much narrower than its seemingly broad language. Despite the fact that the result of the suit could greatly affect the success of the Debtor's Plan, it would no longer be classified as a core proceeding under the *Wood* definition.